Good morning, Your Honors. My name is Tom Myers. I'm General Counsel for Aids Hlthcre Fndtn. Before I get started, I'd like to reserve four minutes for rebuttal. But you know your entire time is showing, so you'll have to stop when it's four minutes. I'm on my own, you got it. You've got to watch it, too, because I may get so entranced by your argument, I'll just forget the time. We can only hope. Aids Hlthcre Fndtn is a California nonprofit that operates medical clinics and provides medical care to people with AIDS and HIV regardless of ability to pay. You have to speak a little louder because everything you say is recorded. You might even be on television. And people, anyone that's got a computer, I think, can get on and listen to you. So people listening to you now as far away as downtown Los Angeles. I may have to go call my mother. Yeah. I'm sorry. The clerk will do it. Just give him the phone number. Aids Hlthcre Fndtn was one of the original recipients of funding under what's known as the Ryan White Care Act, under what's called Title III of the act. The act is broken into a number of titles. To provide this medical care, it applied for and received this grant for a number of years. Suddenly, towards the end of the 1990s, its applications were no longer accepted, and since then, despite numerous applications, it has been rejected for funding under this title. Aids Hlthcre Fndtn wants to know as much as possible why this has occurred, primarily so it can fix it if possible and continue to receive funding, continue to fulfill its nonprofit mission. When an application is rejected, is an explanation provided? There is an explanation, yes. What was the explanation that was given? There are, depending, there's a number of categories in the application, and sometimes scores are set out, sometimes explanations as to the relative strengths and weaknesses of the grant. From your reading of the explanation that was given, what was the reason for denial? Quite frankly, Your Honor, we don't know why. I've looked through it repeatedly. I don't know why we were rejected. It's the same application with the same organization. We've only gotten bigger. We've only improved our medical services. We've only become more sophisticated. So there is no explanation? Is that what you're saying? I'm not saying that, Your Honor. I'm saying I don't understand the explanation. But what explanation was given? To the best of my recollection, explanations were given that we did not provide enough, I believe, dental services, that some of our recordkeeping perhaps needed to be improved. Again, I don't have all the reasons. Well, can't you call these folks up and say, well, help me out. What was wrong with my application? Where was I weak? We have actually done that. The answers have not been full and forthcoming. You've never gotten any grants from this organization? Under Title III. Since, I believe, 2000, we've not gotten any grants. Within the Department of Health and Human Services, we've received other grants. We received monies from Los Angeles County under another title of the Ryan White Care Act. So we received monies under this act from a lot of different places. This particular title of the act, this particular agency, the Health Resource Services Agency, we have been unable to reestablish funding under that agency and under that title. Well, have they made any grants involving organizations that are involved with seeking a cure for AIDS or treating AIDS patients? Well, the Title III grant is for what's known as early intervention services. It's grants to nonprofits, other organizations to provide medical care and other services. They may have made grants towards vaccine research. I simply don't know. You're after identities and affiliations, correct? That's part of the information we're after, yes.  By knowing that, we would be able to know whether or not the people who reviewed our applications, whether or not any conflicts between AHF and those organizations, between the people who were doing them, whether or not there was any taint in that process. As set out in the Department's papers and in the Declaration of Darling Christian, there is a review of review applicants done by the Department to see if there are any conflicts, conflicts of the person who is – I'm not sure of the full scope of the conflicts as to whether or not the person who's reviewing has an interest in that agency, has an interest in that grant. We want to make sure that the process is as fair and as clean as possible because we believe, one, for ourselves, if we get this grant money, we're going to be able to do good things with it. Two, we have a nonprofit mission to benefit all people with AIDS and HIV, and making sure that the entire process itself is fair and untainted is an important value to all the people that we serve. So those are the primary reasons why we're interested in that information. And we believe that we have a right, like any member of the public, to that information. The FOIA's basic purpose is that the public should know what the government is doing and why. These names have, as far as I can tell, cases that have looked at this issue have not found them to be part of the deliberative process privilege. They're not the stuff that goes into decision-making. I'm still not sure. How will it help you to know their names? Are you going to call them if those were to be exposed? Probably not. Probably not. What we want to know is do they work for organizations that have some sort of conflict, either in the process itself or in the process of HIV. What we're trying to do is we're trying to eliminate the reasons why we were not funded, and that's one of them. And I think there's an interest of AHF knowing, and I think a public interest as well, knowing that the process itself is clean and fair, especially when you're talking about the allocations of public monies to treat people with AIDS and HIV. So are you implying that there was some type of ill motive on behalf of these individuals? I'm saying we don't know, and that's the point. Without that information, we cannot know, and we'd just like to know. If there is a problem, then we'd like to be able to fix it. If there's not a problem, then great, we can check that off our list and move on and try to figure out what else we need to do to get this funding back. And I wasn't clear on the response. Were the organizations or organization that got the grants providing the same services that you promoted? Some of them provide the same services. Some of them provide different services. They also provide the services in different geographic areas. So there wasn't, in the same area, there wasn't an organization that got the grant that provided the same services in the same area? Actually, there are, yes. There are organizations in the same area that do the same services that you talked about. That serve the same population? Correct. Well, you know the names of the people. You know their names. The people who make these decisions. Actually, I don't, Your Honor, at this point. I don't. The list of people, going back to the emails, the redacted portion of the emails, it's unclear whether any of those persons were involved in any of the decision processes at all. Their names, their titles do not match up to the decision process that was laid out in the Declaration of Darlene Christian. There's no match between the two. So it's hard to say how this information got from this area over to this decision process. There's no evidence of how it happened. So the evidence that they've put forward is insufficient to affirmatively show that the exemption fits. And when you go back to the fact that the only people who have seen this information is the department, and they have characterized the information that's held, at least in the emails, as personal information of the senders and recipients of those emails, that would cause personal embarrassment would this information be released, and that the information does not shed light on how the department or any component thereof performs its statutory duties. Counsel, would you agree that this is a fairly small community of people who evaluate and assess the grants for this area? Unfortunately, Your Honor, no. It's not? No, unfortunately, because AIDS is such a widespread problem. There are numerous organizations throughout the country. There are hundreds, thousands of nonprofits. I'm talking about the people who evaluate. I'm saying the people who evaluate and participate in the assessment of these types of grants. I understand that there may be a lot of AIDS organizations, but what about the people who evaluate and assess for grants? You're saying that's a widespread community? Right, because, again, I don't know that, but I do know there's thousands of organizations and the expertise the department draws on.  Are there thousands of people who are involved in the process? That I don't know, Your Honor. I thought there was evidence in the record that there's a small community of people who are drawn upon to assess. That's the characterization. If that's in there, that's the characterization the department makes, and, again, one of the problems with the FOIA case is I have no ability to test that assertion. But if that's in a VON affidavit and the district court gives credence to that, how do we second-guess that without some information to the contrary? Well, I understand what you're saying. It's just that regardless of the size of the community that it draws from, the names themselves are not subject to this. Here's my point. If it's a relatively small pool of people we're talking about and their names are released, it would compromise their ability to be candid, because then they will fear that their names will be exposed, there will be pressure brought, you know, the community, you know, will impugn their integrity. There's some credence to that idea that if you expose the names of the individuals who are doing the evaluation, you do harm to the process, because the process becomes less candid. There is that concern. The cases that have held the other way I'm sure have addressed that concern. In addition, what we're talking about is the names. We're not talking about the contents of those evaluations. The fact that somebody reviewed an application and somewhere down the line the Department of Health and Human Services decided not to fund the application does not mean that. It wouldn't take much to match up the person with their evaluation if you get enough information. And that's, I mean, that's basically what you said you want to do. You want to see if there's a conflict between some of the people who are doing the evaluation in your organization. So that's essentially what you want to do is to get the names of the people so that you can perhaps challenge the way they've evaluated your application. And that's, to me, detrimental to the process. Right, but at the same, that may very well be true. But at the same time, there's an inherent tension or conflict between that and the open government policy of FOIA. In fact, haven't you been offered the identities of these people, but not without reference to specific decision making? Correct. And, again, it doesn't get at the purpose that we're trying to establish, whether or not there's been any. The fact that we may know the people who were involved on the objective review process in general doesn't mean whether or not any specific application has been in any way done unfairly. The bottom line, you've gotten all the information except for the specific individuals who made the decision on your application. At this point, correct. And, again, to the extent that that is to be, that it should be factored, and I argue that it should not be factored into, the information is either on the exclusive provisions of FOIA is either exempt or it's not exempt. If people are concerned because the department has released the evaluations of AHS applications, then they have a concern with what the department's done, not with AHS. AHS still has a right to those names. But you have the names. I have the names of everybody, for one group, of everybody who reviewed the entire thing. We still don't know who reviewed whose applications. And without that... That was my point about the deliberative process. Exemption is that if you do get the specific people who reviewed your application, how does that help the process? I'm not talking about your request, but what effect does that have on the process? It helps ensure that the process is free from conflicts, free from bias. That's how. But you don't know if there's a bias. Even if you get the names of the people who reviewed your application, that doesn't show bias. It may or it may not. We don't know that until we get the names. We don't know what groups they work for. We don't know what their history is. We don't know these things because we don't know, and that's the whole problem. We're operating in a vacuum here. You do have their affiliations. It's just the dots haven't been connected, correct? There's a list of affiliations and there's a list of people, but without specific reference. I don't have a list of affiliations. What I have is a list of names. And, again, this has all been given after the decision at the district court level. All I have is a list of names. I don't know who did what to whom. So if you got a list of affiliations, would that serve your purpose? Unfortunately, it wouldn't because, again, I don't know what applications were reviewed by which people. But you could look at all of those people and all the affiliations and whatever evaluation you want to make as to whether or not if that particular person reviewed your application, there would be a problem. They don't have to narrow it down to the exact people who reviewed your application for you to make the connection. If you want to go through the whole list and all of the organizations, you could do the same thing, couldn't you? I could, but, again, that is the only way I can stand on it. Very good point. The only way I can stand on this is the fact that the names of the reviewers are not considered the information that's been compiled to assist in making a decision. Okay. What case authority are you relying upon to support your argument that names of evaluators are not part of the deliberative process? Well, the cases that I cited in my brief. Give me your best case for that proposition. Well, the best cases are. . . One, give me your best case. The best one, I would say it's Philadelphia newspapers. That would be my best one. Okay. So you're saying the Philadelphia newspaper says that the names of evaluators are not considered part of the deliberative process material. Yes. The names of the people who create the information that makes the decision are not themselves part of the process. That's my understanding of Philadelphia is what that holds. They specifically talk about real estate appraisers. That's true. But they say we state most emphatically at this juncture, the names and addresses of appraisers are not part of the raw input that contributes to decision making. That's the holding of the Philadelphia case. Okay. Are there any more questions? I've down to my four minutes. Okay. Thank you very much. Good morning. May it please the Court, I am Assistant United States Attorney Alarise Medrano. I'm representing the defendants and appellees in this case. And I think the Court has already determined that this is a very narrow issue that we're talking about. This case stems from three separate FOIA requests by AIDS Healthcare to the agencies. In response to those requests, approximately 800 documents have been released. What was at issue in the District Court were 19 documents, only two of which were completely withheld. The rest is just portions of information. What is now before this Court is only 14 documents. Documents 1 through 11 are e-mails where simply a line or sometimes a couple of words have been redacted. And documents 12 through 14 are just simply the names of the reviewers, which we've already been discussing this morning. So it is a very limited amount of information. And I think in the spirit of complying with FOIA, the agency has really done its best to release as much information as possible, to segregate any releasable information that it could from issues that it may have had in terms of exemptions, and to reduce that to AIDS Healthcare. That process went on at the administrative level. It went on in the District Court. And Your Honor asked Mr. Myers about whether, you know, he had just called up and asked for some information about what had happened in terms of the non-funding or the denial of their applications. And, in fact, that was done at the administrative level, and it was offered at the District Court level. There have been numerous efforts to discuss what the problems may or may not have been with the applications. Mr. Myers also noted that his applications were rejected. They were not rejected. They were considered. They were denied. Some were actually approved but not funded. And as explained in the Declaration of Darlene Christian, that means that they may have had an acceptable application. However, when the money comes in, sometimes there's not enough to go around. There are three funding points during the year. They may not have been funded at a given time. Your Honors are correct that they do now know the names of the universe of reviewers who were used in the application processes they issued. Those were produced in accordance with the District Court's order, which granted in part and denied in part the agency's motion for summary judgment. So in response to that, we did go ahead and release the names of the reviewers. There's approximately 40 names. So it is not an extremely large number of people. Certainly the identification of any names of individuals who perhaps have some sort of conflict, as alluded to by Mr. Myers, would be recognizable from a list like this. But would there be some conflict screening by the agency before those individuals were assigned evaluation responsibility? I believe that the Declaration of Darlene Christian indicates that at the time the review committee meets together to discuss applications, there's a determination made about whether anyone in that room has a conflict with anyone else who's being reviewed. And if that is the case, that person is excused and does not participate in the discussion of that particular service provider's application. What's your response to opposing counsel's citation to the Philadelphia newspapers case? Obviously it's not a case that's binding in the Ninth Circuit. Right. A District Court case from Pennsylvania. But how do you respond to his citation of that case to support his argument that the names and organizations would not be exempted? Well, I think the names are more important in the case here because they do go to the process. And the B-5 exemption attempts to protect the process of the agency in making these types of determinations. So as Ms. Christian explained in her declaration, it is difficult to find people that are able to assist in reviewing these applications and giving good input, analyzing them, and so forth. So there's only a small amount of money paid to them to do this, and as I understand it, a large amount of work involved. So to expose them to this kind of public scrutiny or scrutiny specifically by the people that they're evaluating, I think, would impede that process. It would certainly make them less willing to give frank comments about what they're doing, and perhaps we would see something of more a generalized approval or denial without the good rationale that we see in the documents, even those that are disclosed here. So I think the names are central to protecting the process because those individuals are our process. They are the people who are making the determinations and some tough calls about where money is going to go amongst a number of deserving providers, service providers. And so without that specific rationale, that may in the end hurt applicants because they won't know how this panel or group of people reach their ultimate decision. That's correct. I think you'll see less information about what may have been the deficiencies in the application, and that takes me back to a question that was asked of Mr. Myers earlier. In terms of whether he was told what the problems were in his applications, and he indicated he wasn't sure about that, but those rationales have been discussed in the context of at least the administrative part of this case, and I believe in the district court part of the case as well, where we gave specific examples of submissions of applications that were for the wrong service area, for example, if bidding was open for the Oakland area, they submitted an application that had clearly just been turned around and used over and over again that had the L.A. area on it, or they used an application that had inappropriate dates on it. Again, this is a process whereby these service providers repeatedly request funds through the years, and they reuse their applications. They do hire grant writers to assist them in that process, at least some service providers do. So these were things that were clearly missed or overlooked in what should have been a simple application process, and could not be overlooked when it came to a limited pot of money that could be spread around to the service providers who were applying for it. So he was given reasons why there were problems with his submissions, and there were offers made to discuss those and correct them. The other issue that arose that I would like to speak to briefly is this alleged conflict between the language used in the Christian application between B-5 and B-6 exemptions. In attempting to assert the B-6 exemption, which we lost on at the district court, there is a quote in Ms. Christian's declaration that Mr. Myers has interpreted to mean that we are conceding on the issue that this doesn't tell us anything about the process, because she indicates that, quote, disclosing the information being withheld does not shed light on how DHHS or any component thereof performs their statutory duties. Similarly, disclosure of the withheld information would reveal little or nothing about the operations or activities of DHS or any component thereof. I think we need to remember that she is talking about the B-6 exemption there, which is slightly different, and that's really talking about Component 2 of the balancing test under Exemption 6, and it concerns questions about the public's interest in shedding light on the agencies with respect to their statutory duties. I would liken it to monitoring their activities. For example, are they timely processing applications? Are they abiding by the set-out procedures for handling those applications? But B-5 really is different. It's going to the deliberative process of the agency in making these determinations. It really goes to the thinking processes involved in those employees and reviewers who are looking at these applications. And the interest there is really to protect that process, and I think the best case that discusses that is National Wildlife Federation, where it really discusses the give and take that goes on amongst the individuals involved in making these decisions, and that's what's at issue in this case. Unless the Court has any further questions for me, I would submit on the papers. Thank you. I wanted to go back and address the assertion just made regarding the difference between the Exemption 6 and Exemption 5. Basically, this is part of the difficulty with FOIA cases. The Department has now characterized the same information differently, depending on which exemption it's trying to put itself under. It said it has nothing to do with the operations of DHHS. It says it sheds little light on how they perform their statutory duties. Assessing, evaluating, allocating, awarding these funds is part of their statutory duty. They said it has nothing to do with it. They said it's personal information. I think that makes it clear that it cannot fit under the Delivered Process Privilege, which deals with material set up to make a decision, the exposures of which would harm that process. And if it has nothing to do with the process, the disclosure of it cannot harm that process. It's a situation where the Department is trying to say two different things about the same piece of information to try to fit the same exemption. Finally. Well, they're different exemptions, so it's sort of like alternative pleading. I understand that, but the document is what the document is. There are two ways of looking at it. They're saying if you don't see it this way for this exemption, then look at it this way for this exemption. I kind of look at that like a pleading. If I don't state, you know, an intentional tort, then maybe I state a negligence or something like that. I understand that. I just think there's a big difference between a pleading that's understood and a factual assertion as to the contents of a document that the only part that gets seen is this. Well, that's more like an interpretation rather than what is actually in the document as to how it should be. That's the only evidence that we have. There's no ability, because certainly, because especially the exemptions of health, I'm not going to be able to see the evidence. I'm not going to be able to depose Ms. Christian to find out what she means by it. Everything you have is the assertion basically of counsel as to what Ms. Christian means. Ms. Christian is not here. I was unable to depose her. All I have is what she stated. I understand. She stated that. And then finally, going back to even assuming that that is not dispositive, and I believe that it is, I don't believe they've made an affirmative showing that the documents fit under the exemption. The only decision that they've pointed to in their documents is the 1999 decision. They say it is a yearly process, but the only decision they've pointed to is 1999. They've set out a process by how a decision is made, who is involved, and at what levels. The information that's being withheld does not fit into that. There's no overlap. But isn't there a rolling funding scheme so that money is released at various points throughout the year? It may be released at various points, but the decision to fund or not fund is made once, and that was made in December of 1999. Well, I thought that, I thought, well, maybe I'm misunderstanding the record, but I thought as funds, more funds became available or somebody didn't provide the services or take the money or whatever, that there would be other points along the continuum where there might be funding. That's not my understanding. There are different organizations get different funded at different times, so there's a different measure of funding. So one organization might get funded every July, et cetera. But the decision to fund itself appears to be made once. So I thought that opposing counsel said you could be approved for funding, but just when it came time for the money to be dispensed, it had run out. That's what I thought. That may be possible. But at the same time, that whole decision process, regardless of the time period, the people who are the subjects and senders or recipients of these e-mails are not part of this. Were you approved for funding? Was your organization approved for funding? Prior years, yes. Yes, that's the whole point. We were an original grantee of this program. I mean, you were never approved after that point? Correct. I mean, we still are not approved. It's an ongoing thing, which we're, again, trying to figure out. And then last but not least, you know, they concede as much. The e-mails were not part of this formal decision-making process. On page 31 of their brief, they say the e-mails may not be part of this formal process. However, it would clearly, quote-unquote, it's the kind of give and take that would, quote-unquote, factor into this process. But there's no evidence of how it factors in. Again, they say how the decision is supposed to be made, where it goes, how it flows. All of the information is outside of that channel, and there's no evidence of how it gets in. So they have not established that it's in any way decisional. What they're trying to do, I think in part because they know it is not really decisional material because of what they stated about it with respect to exemption B-6, is essentially trying to say that we're discussing AHF. AHF is applying for something. Therefore, it's part of the decision-making process, and that's the situation where the exception is going to follow the rule. Unless there's no further questions, I thank the Court very much for its time. Thank you. Thank you. The matter will stand submitted.
judges: Pregerson, Rawlinson, Sandoval